COLORADO FUEL & IRON COMPANY, APPELLANT, v. THE WESTERN HARDWARE COMPANY ET AL., RESPONDENTS.

### ASSIGNMENT BY CORPORATION—PREFERRED CREDITORS.

Defendant, a corporation, made an assignment of its property to M. for the benefit of its creditors, and made the Commercial Bank of Provo a preferred creditor. S., who owned 60 of the 300 shares in the defendant corporation, and who was one of its stockholders, was also president and director of the bank

which was made a preferred creditor, and held 195 of the 750 shares of bank stock; his wife holding at the same time 50 shares of the same stock. It was found that the assignment was *bona fide,* without intention to defraud creditors; that the vote to make the bank a preferred creditor was by the unanimous vote of the directors, including S., and sanctioned by all the stockholders; that the preference was not made for the individual benefit of S.; that the bank was not a stockholder in the defendant corporation; and that the defendant company contemplated a cessation of its business and was insolvent at the time. *Held,* that under these circumstances the double relation of S., as director and stockholder of both corporations, would not render the assignment fraudulent and void, when the same result would have been reached had he refrained from voting. The case of *Manufacturing Co.* v. *Hutchinson,* 11 C. C. A. 320, approved, but distinguished.

(No. 835.    Decided Oct. 4, 1897.)

Appeal from the Third district court, Salt Lake county. Ogden Hiles, *Judge.*

Action by the Colorado Fuel & Iron Company against the Western Hardware Company and Oscar W. Moyle to set aside a deed of assignment for the benefit of creditors. Joseph Geoghegan and others intervened. From a judgment for defendants, plaintiff and interveners appeal. *Affirmed.*

*Stephens & Smith,* for appellants:

Cited: *Smith* v. *Sipperly,* 9 Utah 267; *Coblentz* v. *Driver,* 10 Utah 96; *Noble* v. *Mt. Pleasant,* 12 Utah 213; *Crawford* v. *Neal,* 144 U. S. 598; Burrill Assign. (5th ed.) 352; *Vernon* v. *Upson,* 60 Wis. 418; 19 N. W. R. 400; *Peters* v. *Bain,* 133 U. S. 670; 10 Supreme Court Repts. 354; *Mayer* v. *Hellmann,* 91 U. S. 496; *Estes* v. *Gunter,* 122 U. S. 450; *Emmerson* v. *Senter,* 118 U. S. 1.

*Moyle, Zane & Costigan* and *Dey & Street,* for respondents.

MINER, J.:

The defendant the Western Hardware Company was a corporation organized under the laws of Utah, with a capital stock of $30,000, divided into 300 shares of $100 each. One hundred and fifty shares of this stock were held by five stockholders, who were also directors in the corporation, and the balance of the stock was owned by the corporation, and was not issued. Reed Smoot held 60 shares of the stock, and was a director of the corporation. On September 9, 1896, the corporation, being insolvent and unable to pay its debts, by a vote of all its directors and stockholders, including Mr. Smoot, for the purpose of paying its debts, and contemplating a cessation of business, passed, by unanimous vote, a resolution, and caused to be made, executed, and delivered, an assignment of all its property to defendant Moyle for the benefit of its creditors. The Provo Commercial & Savings Bank, a corporation, was, among others, made a first preferred creditor for $3,000. There was also a list of several who were second preferred creditors. The plaintiff and interveners, some of whom were attaching creditors, were in the third and unpreferred list of creditors. The Provo Commercial & Savings Bank had a capital stock of $75,000, divided into 750 shares of a par value of $100. At the time of the making of the assignment by the Western Hardware Company, Reed Smoot was a director and president of the bank, and the owner of 195 shares of its capital stock, and his wife owned 50 shares of said stock. According to the terms of the assignment, the plaintiff and interveners would receive not over 70 per cent. of their claims from the proceeds of the assigned property, while the preferred creditors, including the bank, would receive full payment of their claims. This action was brought to set aside and declare void the deed

of assignment. Plaintiff and interveners now claim that by reason of the preference of the Provo Commercial & Savings Bank, in which Reed Smoot was president, director, and stockholder, he derived a direct advantage from such preference, and that the assignment is therefore void, by reason of the preference of the bank by the hardware company over other creditors, for whom he stood in a position of trustee. The question for determination in this case is whether the double agency of Mr. Smoot, as stockholder and director in each corporation, renders the assignment fraudulent and void in fact, because the bank, in which he and his wife owned about one-third of the stock, was made a preferred creditor by a vote of all the stockholders and directors of the hardware company, in which vote he participated, notwithstanding the same result would have been reached had he refrained from voting, and notwithstanding that the assignment was made in good faith, without any fraud in fact, and notwithstanding, as the court found, that Smoot would not derive any benefit, or secure to himself any advantage, by reason of the preference.

In the case of *Wyeth Hardware & Manuf'g Co.* v. *James–Spencer–Bateman Co.,* 15 Utah 111, this court held that a corporation is an artificial person, acting in an individual capacity, and in this state, in the absence of insolvent laws and statutory restrictions, it has the same power to prefer creditors, who are not its officers or agents, by deed of assignment or otherwise, as a private debtor has, so long as its assets have not been taken into possession by a court of equity in a proper proceeding, and that the assets of an insolvent corporation constitute a trust fund, in a sense that they cannot be appropriated for any purpose foreign to its legitimate business, or distributed among its officers or stockholders

until its debts are paid. In the case of *Noble Mercantile Co.* v. *Mt. Pleasant Equitable Co-op. Inst.,* 12 Utah 213, this court said:

" We think the great weight of authority is in favor of the rule that when an incorporation has become insolvent, and abandoned the objects for which it was created, its directors or managing agents cannot, by deed of assignment, prefer themselves over other creditors, so as to secure an advantage over them by reason of their official positions, and superior knowledge concerning the corporate affairs. In such a crisis its property becomes affected with an equitable lien and trust for the benefit of all the creditors, and equity will not permit those who stand in relation of trustees to them to manage and dispose of the corporate property for the individual benefit of such trustees, regardless of the rights of the *cestuis que trustent,* not even though they are not trustees, as is contended by the respondents, in the technical sense of that term, because, whatever may be the technical standing of such officers, they hold, in respect to the corporate affairs, a fiduciary relation to the creditors, which is controlled by equitable rules and principles." In the case of *Manufacturing Co.* v. *Hutchinson,* 11 C. C. A. 320, it appears that two companies had practically the same set of officers and stockholders. The Hopper Company, being insolvent, drew bills on the Sutton Company, which were accepted for accommodation, but without receiving any value therefor. Before the bills matured the Hopper Company gave a mortgage on all its property to the directors of the Sutton Company to secure the bills, and immediately thereafter made an assignment for the benefit of its creditors. The court held the transaction fraudulent in fact, and also held that the case was one in which an insolvent corporation, recognizing its inability to further

prosecute its business, and with no hope of recovering from its financial embarrassment, gives a preference by mortgage of its property to some of its directors, being also creditors, and that·such preference could not rightfully be made. We quite agree with the doctrine laid down in the above-mentioned case, but the case before us presents a different state of facts. The hardware company was justly and honestly indebted to the bank. It was not indebted to Smoot, its director, in any sense. Smoot, individually, had no claim that he could enforce against the hardware company. The execution of the deed of assignment in which the bank was preferred was authorized by a unanimous vote of five directors, being the entire directory, four of whom had no stock in the bank, and by a vote of all the stockholders. Consequently a large majority of the directors, constituting more than a quorum, by their votes authorized the preference of the bank, independent of the vote of Mr. Smoot, who held stock in the bank, and this act was ratified by all the stockholders. At the time of the assignment the hardware company had assets amounting to $57,000, and liabilities not exceeding $42,000. At the time of the trial the receiver had collected from assets the sum of $41,-955.34, and held assets yet undisposed of. Under the agreed state of facts, the court found that the indebtedness to the bank was an honest, *bona fide* indebtedness; that the preference was made in good faith; that Smoot did not, by reason of the preference of the bank, secure to himself any advantage or derive any benefit therefrom; and that there was no intention on the part of the assignors that he should. These findings seem to be sustained by the agreed state of facts, and no actual fraud seems to have been intended. In *Haywood* v. *Lumber Co.,* 64 Wis. 639, the interested directors constituted a major-

ity of the quorum of directors which voted to secure claims to themselves, and the court held the preference unlawful. In *Buell* v. *Buckingham*, 16 Iowa, 284, approved in *Levering* v. *Bimel*, (Ind. Sup.) 45 N. E. 775, it is held that where a majority of the board of directors, constituting a quorum, by their votes authorized the preference, independent of the votes of the two who were sureties, and there was no actual fraud shown, the preference was valid. In this case a majority of the board of directors, representing a large majority of the capital stock, without including Mr. Smoot, supported by all the stockholders, voted for this preference. Had Smoot voted against the assignment and preference in the board of directors and stockholders' meeting, or had he been absent, the assignment and preference would have carried. The corporation itself directed the preference. Its stockholders ratified the act. The transaction was honest, and made in good faith. Mr. Smoot obtained no direct personal benefit therefrom. The bank was not a stockholder in the hardware company. Under such circumstances it would be a hardship to compel the bank to suffer because one of its officers happened to be a director and stockholder in the hardware company, when his vote either way would not have changed or altered the result. We are of the opinion that the double relation of Smoot, as director and stockholder of both corporations, would not render the assignment fraudulent and void because the bank in which he and his wife owned one-third of the stock was made a preferred creditor by a vote of all the stockholders and directors of the hardware company, in which vote he participated, when the same result would have been reached had he refrained from voting, and when the preference and assignment were made of a *bona fide* debt, in good faith, without any fraud or deception

whatever, and without any intention of preferring or benefiting Mr. Smoot personally, notwithstanding the hardware company contemplated a cessation of its business and was insolvent at the time. Had the assignment been made fraudulently and in bad faith, with an intent to prefer officers and stockholders of the hardware company, or had a majority of the directors and stockholders in the hardware company been officers and stockholders of the preferred creditor, and had voted for such preference with a fraudulent purpose, we should doubtless arrive at a different conclusion from that reached in this case. This question is fully discussed in the following cases: *Levering* v. *Bimel* (Ind. Sup.), 45 N. E. 775; *Noble Mercantile Co.* v. *Mt. Pleasant Equitable Co-op. Inst.,* 12 Utah 213; *Buell* v. *Buckingham,* 16 Iowa 284; *Leathers* v. *Janney* (La.), 6 South. 884; *San Diego, O. T. & P. B. R. Co.* v. *Pacific Beach Co.,* 112 Cal. 53; *Adams Min. Co.* v. *Senter,* 26 Mich. 73; *Pauly* v. *Pauly,* 107 Cal. 8; *Wyeth Hardware & Manuf'g Co.* v. *James-Spencer-Bateman Co.,* 15 Utah 111; *Sells* v. *Commission Co.* (Miss.), 17 South. 236; *Sanford Fork & Tool Co.* v. *Howe, Brown & Co.,* 157 U. S. 31; *Henderson* v. *Trust Co.* (Ind. Sup.), 40 N. E. 516; *Manufacturing Co.* v. *Hutchinson,* 11 C. C. A. 320; *Haywood* v. *Lumber Co.,* 64 Wis. 639. Under the peculiar circumstances of this case, we are of the opinion that the judgment of the court below should be affirmed.

ZANE, C. J., and BARTCH, J., concur.